**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

**FILED**
OCT 1 5 2001
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

KIM McABEE,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　CASE NO.: CV-01-PT-1045-M
　　　　　　　　　　　　　　　　　)
THE CITY OF FORT PAYNE,　　　　　)
ALABAMA,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　　)

**ENTERED**
OCT 1 5 200

**MEMORANDUM OPINION**

This cause comes to be heard upon defendant City of Fort Payne's (City) Motion for Summary Judgment filed on May 23, 2001.[1]

**FACTS**

Kim McAbee (McAbee) is a riparian landowner whose property abuts a tributary of Big Wills Creek in the vicinity of the Fort Payne Waste Water Treatment Plant (WWTP). The tributary flows into Big Wills Creek at a point upstream from the WWTP. McAbee's property is also located downstream from the pump station connected to the Earthgrains Company's bakery facility in Fort Payne.

The City owns the WWTP and operates it pursuant to National Pollutant Discharge Elimination System (NPDES) Permit AL002311 (the Permit), which was issued by the Alabama Department of Environmental Management (ADEM) on November 17, 1997. The Permit authorizes the discharge of particular pollutants from Outfall 001 subject to specified discharge

---

[1] The City filed a Motion to Dismiss or in the alternative a Motion for Summary Judgment on May 23, 2001. This court converted the Motion to Dismiss/Motion for Summary Judgment to a Motion for Summary Judgment by Order dated June 7, 2001.

31

limitations and monitoring requirements.[2]  The City is a "person" as that term is defined by the

Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1362(5) (1994), and the Alabama

Water Pollution Control Act (AWPCA), *Ala. Code* § 22-22-1(7) (1975).  Consequently, the City

is subject to the regulations of said Acts regarding the operation and maintenance of the WWTP.

The City has been discharging pollutants to Big Wills Creek from Outfall 001 in

violation of the effluent limitations established in the Permit since December 1, 1997.[3]  In

particular, construction activity at the WWTP from April 1999 to the present created a fifty

percent reduction in the WWTP's treatment capacity.  This reduction resulted in ongoing

violations of the Permit's effluent limitations[4] and at least one fish kill on August 12, 1999.[5]

In addition, the City failed to properly operate or maintain the gravity line, pump station,

and force main connected to the Earthgrains Company's bakery facility in Fort Payne.  Lack of

maintenance of these facilities led to repeated leaking and discharging of raw sewage and

polluted industrial waste from an unpermitted point source to an unnamed tributary of Big Wills

Creek and to McAbee's private pond.[6]  This sewage and waste continues to be present in

---

[2]  Part I. A. of the Permit sets discharge limitations and monitoring requirements for the following
pollutants:  Carbonaceous Biochemical Oxygen Demand (CBOD), Total Suspended Solids (TSS), Ammonia as
Nitrogen (NH3-N), Total Kjeldahl Nitrogen (TKN), and Fecal Coliform (FC).

[3]  A detailed listing of said violations is provided in Paragraph 11(a) of the Complaint.

[4]  *See supra* note 3.

[5]  Plaintiff alleges that the reduction in the WWTP's discharge capacity, due to the construction activity,
was a violation of Part II, A., 1. of the Permit because the City failed "at all times [to] properly operate and maintain
in good working order all treatment or control facilities or systems."  Plaintiff further alleges that the City violated
Parts II, D., 1., e. and II., B., 1. of the Permit by failing to take all reasonable steps to minimize or prevent any
violation of the Permit and by failing to minimize or prevent and adverse impact of any permit violation from
December 1, 1997, to the present.

[6]  Unpermitted discharges of raw sewage and industrial waste from the Earthgrains' gravity line, pump
station, and force main occurred on August 26, 1999; September 28, 1999; December 11, 1999; December 29,
1999; January 22, 2000.  Furthermore, one or more overflows from the pump station has occurred since January 22,
2000, and various discharges from the gravity line, pump station, or force main occurred prior to August 26, 1999.

McAbee's pond.

Furthermore, the City failed to operate the Earthgrains and the Airport pump stations with auxiliary generators. The Airport pump station failed on October 24 or 25, 1999, and the Earthgrains pump station failed on or about January 22, 2000. The pollutants from these discharges caused two additional fish kills occurring on October 26, 1999, and January 22, 2000.

In light of the continuous and ongoing nature of the Permit violations at the WWTP and the City's failure to maintain the Earthgrains' gravity line, pump station, and force main, McAbee filed a citizen suit pursuant to Section 505 of the FWPCA, 33 U.S.C. § 1365(a) (1994). Proper notice of intent to sue was provided to the City as required by 33 U.S.C. § 1365(b) (1994).

## ARGUMENT

The City moves for summary judgment on two grounds. First, the City contends that the citizen suit is barred under *Ala. Code* § 6-5-440 because McAbee is pursuing a civil action against the City and the Earthgrains Company in the Circuit Court of DeKalb County, Alabama, for common law remedies arising out of the same cause of action.[7] Second, the City argues that its consent administrative order entered into with ADEM in 1999, regarding Permit violations at the WWTP, invokes the FWPCA's diligent prosecution bar found in 33 U.S.C. § 1319(g)(6)(A) (1994).

### Alabama Code § 6-5-440

The City argues that *Ala. Code* § 6-5-440 provides a statutory bar to the citizen suit. The

_____

[7] McAbee's state lawsuit raises claims for common law negligence, infliction of emotional distress, nuisance, conversion of property, and trespass against the City and the Earthgrains Company.

statute states:

> No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times.

*Ala. Code* § 6-5-440 (1975). According to the City, McAbee commenced an action against it regarding its maintenance and operation of the WWTP and the Earthgrains' facilities in the Dekalb County Circuit Court on April 17, 2001.[8] Subsequent to filing the state court lawsuit, McAbee filed the present action on April 27, 2001. Consequently, the City argues that *Ala. Code* § 6-5-440 prohibits the federal lawsuit because of the pendency of the state lawsuit based on the same cause of action.

In support of this proposition, the City relies primarily on the Alabama Supreme Court's opinion in *Weaver v. Hood*, 577 So. 2d 440 (Ala. 1991). The City contends that *Weaver* demonstrates that the Alabama Supreme Court has consistently refused to allow an individual to prosecute an action in state court while an action based on the same cause of action is pending in a federal court in Alabama. This principle prevents a plaintiff from splitting a cause of action and provides the defendant with protection from having to defend against two suits in different courts at the same time based on the same cause of action.

The City further states that the test for the applicability of the prohibition against claim splitting is whether a judgment in one action would be res judicata of another. *See H.L. Raburn & Co. v. Massey-Draughon Bus. College*, 388 So. 2d 1225 (Ala. Civ. App. 1980). According to the City, causes of action are the same and res judicata would be applicable when the two actions

---

[8] The state action is styled CV-01-160: Charles McAbee and Kim McAbee v. The Municipality of Fort Payne, Alabama; the Earthgrains Company; and Earthgrains Baking Companies, Inc.

4

between same parties arise from the same operative nucleus of facts, involve the same primary

rights and duties, and when the relief to be awarded arises from the same facts.  *See Jaffree v.*

*Wallace*, 837 F.2d 1461 (11th Cir. 1988).  In particular, the City relies on *Sheridan v. Board of*

*Water and Sewer Commissioners*, 764 So. 2d 526 (Ala. 1999), for the proposition that Alabama

law dictates that "although there may be numerous incidents of sewage overflow, negligent

performance of testing of sewerage systems, or other negligent or ineffective repairs of

problematic sewage systems, such acts relate to a single proximate cause– a failure to repair a

sewerage system or remedy the problems and incidents of overflow."  (City's Reply Brief at 3).

After reviewing the state and federal complaints and applying these standards, the City

contends that this federal lawsuit should be barred because it arises from the same nucleus of

operative facts.  In particular, the City states that the "Parties" section of the Federal Complaint

and the "Background" section of the State Complaint reveal that the stimulus of both actions is

the failure of the City to properly discharge pollutants from its WWTP facility into surrounding

waterways.  The City supports this assertion by discussing how both Complaints highlight the

conditions of Earthgrains' gravity line and pump station and address specific dates of discharges

and overflows.

McAbee makes three primary challenges to this argument.  First, McAbee argues that the

federal lawsuit is based on a federal statutory right of action and, consequently, federal law

preempts conflicting state law.  Second, even if the federal law is not controlling, res judicata

would not apply because the two cases do not share the same cause of action.  Finally, McAbee

contends that res judicata would also not apply because there are different plaintiffs in each

action.

In regards to the first argument, McAbee makes two primary assertions.  First, the

5

Supremacy Clause of the Constitution gives priority to federal rights created by the federal

statutes when they conflict with state laws.  Second, a plain reading of *Ala. Code* § 6-5-440

dictates that it only bars an action in Alabama state courts if based on the same cause of action.

These arguments will now be discussed in turn.

According to McAbee, the Supremacy Clause of the Constitution gives priority to federal

rights created by statutes when they conflict with state laws.  *Mashpee Tribe v. Watt*, 542 F.

Supp. 797 (D. Mass. 1982).  McAbee argues that *Ala. Code* § 6-5-440 is inapplicable because it

conflicts with 33 U.S.C. § 1365(a), which specifically grants to "any citizen" the right "to

commence a civil action on his own behalf" in federal district court "against any person" alleged

to be in violation of a water pollution control permit.  33 U.S.C. § 1365(a).  McAbee contends

that the Alabama Legislature cannot limit this statutory right of action that Congress has

provided.

McAbee also argues that a plain reading of *Ala. Code* § 6-5-440 reveals that it only

operates to bar actions in Alabama state courts.  In support of this proposition McAbee quotes

the following portion of *Ala. Code* § 6-5-440:  "No plaintiff is entitled to prosecute two actions

in the *courts of this state* at the same time for the same cause and against the same party"

(emphasis added).  McAbee explains that this passage clearly limits a litigants ability to maintain

two separate actions in Alabama circuit courts based on the same cause of action.  Furthermore,

McAbee concedes that this passage may limit a litigants ability to maintain an action in a federal

district court and an Alabama circuit court when the cause of action is the same and the federal

court jurisdiction is based on diversity of citizenship.  However, McAbee contends that the plain

language of the statute dictates that when a suit is filed in federal court on a federal question,

*Ala. Code* § 6-5-440 only operates to bar a suit in state court, not a suit in federal court.

Furthermore, McAbee concludes this argument by explaining that all reported federal cases that give effect to *Ala. Code* § 6-5-440 are diversity cases arising under state law.[9]

The second argument raised by McAbee concerning the applicability of *Ala. Code* § 6-5-440 is that the bar is not appropriate because the two cases do not share the same cause of action. McAbee argues that state and federal courts only apply *Ala. Code* § 6-5-440 if the judgment in one action would be res judicata of the other. *Sessions v. Jack Cole*, 158 So. 2d 652 (1963); *Hill v. United Ins. Co. of America*, 998 F. Supp. 1333, 1338 (M.D. Ala. 1998). According to McAbee, causes of action are identical for res judicata purposes when they are based on the same evidence in order to be sustained. *Citizen Legal Envtl. Action Network, Inc. (CLEAN) v. Premium Standard Farms, Inc.*, No. 97-6073-CV-SJ-6, 2000 WL 220464, at *4 (W.D. Mo. Feb. 23, 2000). Additionally, McAbee relies on *CLEAN* for the proposition that causes of action are not identical when they involve separate acts occurring at different times even though those acts may be otherwise related. *Id.* Consequently, a citizen can sue under the FWPCA for each violation of an effluent standard or limitation and the enforcement of that particular standard would not be res judicata as to enforcement of other standards in the permit.

Applying this rationale, McAbee points to several factual distinctions between the federal and state complaint which, in her estimation, prohibit the doctrine of res judicata from being applicable. First, McAbee notes that the state complaint alleges that discharges from a sewer line and pump station *upstream* from her home on a tributary of Big Wills Creek resulted in a trespass upon her property. However, McAbee points out that in Count I of her federal complaint, she alleges that the City violated its NPDES permit by illegally discharging pollutants

---

[9] McAbee notes that the City has failed to cite a single federal case wherein a federal court dismissed a federal cause of action based on the operation of *Ala. Code* § 6-5-440.

from its WWTP, which is located *downstream* from her property.  Second, McAbee explains that

the federal complaint contains allegations that the City failed to maintain the Airport pump

station.  In contrast, her state complaint does not contain allegations pertaining to the Airport

pump station.  Third, McAbee notes that the federal complaint contains allegations in Count III

and IV concerning the City's failure to comply with its Permit's term regarding remediation of

the adverse environmental impact on Big Wills Creek and her pond.  However, her state

complaint does not contain factual allegations concerning the City's failure to remediate the

adverse environmental impact.  Finally, McAbee acknowledges that the factual allegations might

overlap in the two complaints based on the City's failure to operate and maintain the pump

station and gravity line.  With that said, McAbee argues that this factual overlap is

inconsequential because the City's failure was itself a violation of the Permit.  As such, the

FWPCA provides her a federal statutory right to enforce compliance with the Permit.

Finally, McAbee explains that *Ala. Code* § 6-5-440 is inapplicable to this action because

the plaintiffs are not the same in both actions.  In the federal action, McAbee contends that she is

acting as a private attorney general and, consequently, is acting on behalf of the government.

*Dague v. City of Birmingham*, 935 F.2d 1343, 1351 (2d Cir. 1991); *Public Interest Research*

*Group v. Powell Duffryn*, 913 F.2d 64, 74 (3d Cir. 1990).  By contrast, McAbee argues that she

is a private litigant in her state action attempting to vindicate her personal rights.  Consequently,

res judicata would not be appropriate because the parties in both actions are not identical.

### Diligent Prosecution Bar

The City's second ground for summary judgment is that the diligent prosecution bar of

33 U.S.C. § 1319(g)(6)(A) jurisdictionally bars this present action.  The City contends that a

citizen suit filed under 33 U.S.C. § 1365 is jurisdictionally barred under 33 U.S.C. §

1319(g)(6)(A)(ii) when the state has commenced and is diligently prosecuting an action under a

state law comparable to 33 U.S.C. §1319(g). According to the City, it is presently operating

under Consent Order (Order) No. 00-041-CWP issued by ADEM regarding the matters upon

which this cause of action is based. The Order required the City to pay a monetary penalty,

replace two particular filters, monitor discharge points into immediately surrounding creeks,

provide a detailed report outlining the cause of non-compliance, and regularly provide update

reports to ADEM. The City contends that it has complied with the requirements of the Order by

paying the $11,200 civil penalty to ADEM on January 7, 2000, by replacing the two trickling

filters in December 1999, by monitoring discharges into Big Wills Creek and submitting

monthly reports to ADEM since August 1999, by submitting an engineering report concerning

the causes of noncompliance, and by submitting periodic updates to ADEM concerning the

progress of the construction projects at the WWTP, Earthgrains pump station, and the Airport

pump station.

The City relies on the Eighth Circuit's opinion in *Arkansas Wildlife* and First Circuit's

opinion in *Scituate* for legal authority to support its assertion that the Order and its response

constitute diligent prosecution. Specifically, the City argues that *Arkansas Wildlife* is analogous

because the State of Arkansas required a manufacturer to correct its NPDES permit violations,

imposed compliance, make scheduled reports, and pay monetary penalties for its violations.

*Arkansas Wildlife Fed'n v. ICI Americas, Inc.*, 29 F.3d 376 (8th Cir. 1994). The Eighth Circuit

concluded that these steps constituted diligent prosecution by the State. Additionally, the City

relies on *Scituate* for the proposition that "[w]here an agency has specifically addressed the

concerns of an analogous citizen's suit, deference to the agency's plan of attack should be

particularly favored." *North and South Rivers Watershed Ass'n, Inc. v. Town of Scituate*, 949

9

F.2d 552, 557 (1st Cir. 1991).  The City contends that the McAbee's concerns have been addressed in ADEM's Order and that deference should be given to ADEM's course of action in enforcing its water protections laws.

McAbee makes five major challenges to this argument.

First, McAbee argues that 33 U.S.C. § 1319(g)(6)(A)(ii) only bars a citizen suit when the state has diligently prosecuted the same violations alleged in the citizen suit.  *CLEAN*, 2000 WL 220464, at *10.  McAbee asserts that the phrase "any violation" in 33 U.S.C. § 1319(g)(6)(A)(ii) denotes a specific violation.  Therefore, any violation alleged in a citizen suit that is not addressed in the state administrative order would not be barred.  *Id.*  In examining the Order, McAbee notes that the specific language of the Order provides that it is only designed to be a full resolution of the violations cited in it.  Consequently, McAbee argues that every violation alleged in the federal complaint that is not addressed in the Order cannot be barred.  *Frilling v. Village of Anna*, 924 F. Supp. 821, 836-39 (S.D. Ohio 1996).  For example, the violations alleged in the complaint concerning the pump station and the gravity line are not addressed in the Order.  Furthermore, the Order only cites discharge violations that occurred in May, June, July, and August of 1999.  However, McAbee contends that her complaint alleges violations occurring after the ones cited in the Order.  Finally, McAbee notes that her complaint alleges three types of violations not addressed in the Order.[10]

McAbee's second argument is that even if 33 U.S.C. § 1319(g)(6)(A)(ii) applies, it only applies to bar requests for civil penalties.  McAbee points specifically to the language of 33 U.S.C. § 1319(g)(6)(A) which provides in pertinent part:

---

[10] Paragraph 11 alleges three violations not addressed in the Order: percent removal of total suspended solids (TSS), percent removal of biochemical oxygen demand (BOD), and color.

> Action taken by the Administrator or the Secretary . . . under this subsection shall not affect or limit the Administrator's or Secretary's authority to enforce any provision of this chapter; except that any violation– (ii) with respect to which the State has commenced and is diligently prosecuting an action under a State law comparable to this subsection . . . shall not be the subject of a *civil penalty action* under . . . section 1365 of this title.

33 U.S.C.A. § 1319(g)(6)(A) (West Supp. 2001) (emphasis added). McAbee asserts that the

majority view in the case law is that when 33 U.S.C. § 1319(g)(6)(A) is otherwise applicable, it

bars only claims for civil penalties and not claims for injunctive relief under 33 U.S.C. § 1365.

*Citing California Sportfishing v. City of Sacramento*, 905 F. Supp. 792, 806-07 (E.D. Cal. 1995);

*Save Our Bays & Beaches v. City and County of Honolulu*, 904 F. Supp. 1098, 1126 (D. Haw.

1994); *Orange Env't v. County of Orange*, 860 F. Supp. 1003, 1017-18 (S.D.N.Y. 1994).

According to this majority view, McAbee argues, her claim for injunctive relief should not be

barred even if 33 U.S.C. § 1319(g)(6)(A) applies to this action.

McAbee's third argument is that an enforcement action is not considered "diligent" if the

enforcement measure itself violates the law or exceeds agency authority. *Franklin v.

Birmingham Hide & Tallow Co., Inc.*, CV 98-BU-0259-S., at 12 (N.D. Ala. Apr. 22, 1999);

*PIRG v. Hercules, Inc.*, 970 F. Supp. 363, 365 (D.N.J. 1997); *Culbertson v. Coats American,

Inc.*, 913 F. Supp. 1572, 1580 (N.D. Ga. 1995). McAbee contends that the Order violates the

AWPCA in two ways. First, *Ala. Code* § 22-22A-5(18)(c) states that any civil penalty assessed

"shall not be less than $100.00 or exceed $25,000.00 for each violation . . . ." According to

McAbee's calculations, the City was only required to pay a civil penalty of $3.17 for each of the

739 violations of the Permit. Consequently, McAbee argues that the Order was not diligently

prosecuted because ADEM assessed a penalty thirty-one times less than the minimum penalty

ADEM had the legal discretion to impose. Second, McAbee states that ADEM violated *Ala.*

*Code* § 22-22A-5(18)(c) of the AWPCA by failing to consider the statutorily prescribed factors for assessing civil penalties.[11]  McAbee quotes a judge of this court's earlier opinion in *Franklin* for support of this proposition: "[T]he Court does not believe that ADEM could, consistent with 'diligent prosecution,' simply disregard entirely the statutory factors and the number of potential violations in determining what minimum amount could be adequate to settle the alleged violations." *Franklin*, CV 98-BU-0259-S, at 12.  *See also Friends of the Earth v. Laidlaw Envtl. Serv.*, 890 F. Supp. 470, 497 (D.S.C. 1995), *aff'd*, 120 S. Ct. 693 (2000); *PIRG*, 970 F. Supp. at 365.  Specifically, McAbee claims that ADEM failed to consider or determine in its Order the polluter's economic benefit, the seriousness of the violations, the impact of the violations on human health, the standard of care manifested by the polluter, the polluter's efforts to minimize or mitigate the effects of such violations upon the environment, or the polluter's ability to pay.  In light of these deficiencies, McAbee argues that ADEM's Order should not be considered "diligent prosecution."

McAbee's fourth attack on the diligent prosecution argument is that an administrative enforcement action is not diligent if it does not bring the violator into compliance.  *Jones v. City of Lakeland*, 224 F.3d 518, 522-23 (6th Cir. 2000).  McAbee contends that the City has been violating its Permit's effluent limitations for over two years since the Order was entered.  Consequently, McAbee concludes that ADEM's actions should not be deemed diligent prosecution of the AWPCA.

Finally, McAbee states that the diligent prosecution bar is inappropriate because the

---

[11]  The factors ADEM must consider include the following:  irreparable harm to the environment, any threat to the health and safety of the public, the standard of care exhibited by the violator, the economic benefit the violator received, the degree of success of the violator's efforts to minimize or mitigate the effects of such violation upon the environment, the history of previous violations, and the ability of the violator to pay such penalty.  *Ala. Code* § 22-22A-5(18)(c).

12

penalty provision in the AWPCA is not "comparable" to 33 U.S.C. § 1319(g). Section 1319(g) only bars a citizen suit if the state has commenced and is diligently prosecuting an action under a state law "comparable" to 33 U.S.C. § 1319(g). McAbee asks this court to not agree with the statement of another district judge in the Northern District of Alabama in *Tyson Foods* that *Ala. Code* § 22-22A-5(18) is "comparable" to federal law. *Atlantic States Legal Found. v. Tyson Foods*, 682 F. Supp. 1186 (N.D. Ala. 1988), *rev'd on other grounds*, 897 F.2d 1128 (11th Cir. 1990). McAbee argues that the provisions are not comparable because the district judge failed to consider whether the public notice and public participation provisions are comparable. McAbee relies on *United States v. Smithfield Foods, Inc.*, 965 F. Supp. 769, 792-95 (E.D. Va. 1997), *aff'd*, 191 F.3d 576 (4th Cir. 1999), for the proposition that a state law is not comparable if it does not give the public the right to request a hearing prior to issuance of an order, to be heard at a hearing regarding the proposed issuance of an order, to obtain reasons for denial of a hearing, or to seek judicial review of an order. *See Jones*, 224 F.3d at 523-24 (holding that a state law is not comparable to 33 U.S.C. § 1319(g) unless it contains public notice and participation rights similar to those in 33 U.S.C. § 1319(g)).

According to McAbee, the penalty provisions of the AWPCA are not comparable to 33 U.S.C. § 1319(g) because no notice of administrative orders is given until after the orders are final. Additionally, McAbee contends that no opportunity is given to the public to participate in a hearing on the proposed order or comment on the proposed order. *See Ala. Code* § 22-22A-5(18). Because the public is not provided a meaningful opportunity to participate in the decision making process, McAbee concludes that the AWPCA is not comparable to 33 U.S.C. § 1319(g).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the case presents no genuine issue of material

13

fact and if the movant is entitled to judgment as a matter of law. *See Fed. R. Civ. P.* 56(c).

Summary judgment may be granted based upon facts developed during administrative

proceedings, the pleadings, discovery, and supplemental affidavits if together, they show that

there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

(1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party

moving for summary judgment bears the initial burden of explaining the basis of his motion. *Id.*

Once the burden of production has shifted, the nonmoving party then bears the burden of

showing that there are specific facts demonstrating that there is a genuine issue of fact for trial.

*Id.* at 324. The nonmoving party cannot rest on its pleadings or merely reassert its previous

allegations. Instead, Rule 56(c) "requires the non-moving party to go beyond the pleadings" and

present evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324. "When

deciding whether summary judgment is appropriate, all evidence and reasonable factual

inferences drawn therefrom are reviewed in a light most favorable to the non-moving party."

*Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). The trial court must

resolve all reasonable doubts in favor of the nonmoving party, but need not resolve all doubts in

a similar fashion. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

Summary judgment should be denied "[i]f there are . . . 'genuine factual issues that properly can

be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992).

## ANALYSIS

The City's first ground for summary judgment is without merit. The Alabama statute

relied upon by the City simply does not apply to this case. To the contrary, this court must

14

follow the requirements for abstention as set out by the Eleventh Circuit Court of Appeals.[12]  In addressing abstention issues arising between concurrent state and federal actions, the Eleventh Circuit follows the six-part test enunciated in the Supreme Court's *Colorado River* and *Moses H. Cone* decisions.  *See Transouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1294-95 (11th Cir. 1998).  The following six factors are to be considered by the trial court before dismissing the federal action: 1) the order in which the courts assumed jurisdiction over the property; 2) the relative inconvenience of the fora; 3) the order in which jurisdiction was obtained and the relative progress of the two actions; 4) the desire to avoid piecemeal litigation; 5) whether federal law provides the rule of decision; and 6) whether the state court will adequately protect the rights of all parties.[13]  *Id.*  When examining these factors it is important to remember that no one factor is determinative and only the "clearest justification will warrant dismissal."  *Colorado River*, 424 U.S. at 818-19.

Turning to an analysis of the factors, this court concludes that concurrent federal proceedings are proper.  The first factor is not applicable because neither court has assumed jurisdiction over any res or property as such.  *Moses H. Cone*, 460 U.S. at 938-39; *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939) ("[I]f two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the

---

[12]  While the parties do not discuss "abstention" as such, the only possible basis for dismissal that this court can fathom would be abstention.  The general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ."  *McClellan v. Carland*, 217 U.S. 228, 282 (1964).

[13]  When considering these factors, the Supreme Court has admonished trial courts to weigh the factors with a heavy bias in favor of exercising jurisdiction.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 16 (1983).  This is because federal courts have a "virtually unflagging obligation" to exercise jurisdiction where it exists.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  These admonitions have caused this test to be classified as the "exceptional circumstances" test.  *Moses H. Cone*, 460 U.S. at 19.

jurisdiction of the one court must yield to the other"). The second factor is neutral because both

parties would be equally inconvenienced by having to litigate the present action in Etowah

County of this court's Middle Division, instead of in Dekalb County, which is forty-five miles

distant. The third factor is not significant in this case. The state action was filed only nine days

prior to this federal suit. The progress of the litigation is also a consideration under this factor.

*Moses H. Cone*, 460 U.S. at 21. A consideration of this element does not sway this factor in

favor of the City. Consequently, this court concludes that this factor does not weigh heavily in

its analysis. The fourth factor is neutral because state and federal courts both desire to avoid

piecemeal litigation. The fifth factor weighs heavily in favor of McAbee because the FWPCA

will provide the rule of decision in this case. McAbee is pursuing a federal statutory right

granted by Congress. 33 U.S.C. § 1365(a). Finally, the sixth factor is neutral because the

federal and state courts can both utilize their injunctive relief powers to adequately protect the

rights of all parties. In light of this analysis, and being mindful of the "virtually unflagging

obligation . . . to exercise jurisdiction," this court concludes that concurrent jurisdiction is

proper.[14]

The City's second ground for summary judgment is also without merit. ADEM's consent

order can bar McAbee's citizen suit pursued under 33 U.S.C. § 1365(a)(1) only if the statutory

requirements of 33 U.S.C. § 1319(g)(6)(A) are satisfied. This court concludes that the statutory

requirements are not satisfied because the administrative provisions of the AWPCA are not

comparable to the provisions found in the FWPCA.[15]

---

[14]   *Colorado River*, 424 U.S. at 815.

[15]   Due to the court's holding that summary judgment is not appropriate because the administrative penalty
provisions of the AWPCA are not comparable to the provisions found in § 1319(g) of the FWPCA, the court will
not address whether plaintiff's citizen suit is based on the same permit violations covered in the Order entered into

The beginning of this analysis must start with the applicable statute. The statute provides in relevant part:

> **(A) Limitation on actions under other sections**
> Action taken by the Administrator or the Secretary, as the case may be under this subsection shall not affect or limit the Administrator's or Secretary's authority to enforce any provision of this chapter; except that any violation–
> . . . .
>> (ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection, or (iii) for which the Administrator, the Secretary, or the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be,
> shall not be the subject of a civil penalty action under subsection (d) of this section or section 1321(b) of this title or section 1365 of this title.

33 U.S.C.A. § 1319(g)(6)(A) (West Supp. 2000). Courts that have addressed the diligent prosecution bar have interpreted this statute to require that three elements be present before a citizen suit is barred. First, the state must have "commenced" an enforcement procedure against the polluter. *Arkansas Wildlife*, 29 F.3d at 379. Second, the state must be "diligently prosecuting" the enforcement proceedings. *Id.* at 480. Finally, the state's statutory scheme under which enforcement is being pursued must be "comparable" to the federal administrative enforcement scheme promulgated in 33 U.S.C. § 1319(g). *Scituate*, 949 F.2d at 555. If ADEM's actions in the present matter satisfy these three elements, McAbee's citizen suit would

---

between defendant and ADEM. However, it should be noted that the court agrees with the plaintiff's assertion that citizen suits are barred "only if they are based on the *very same* standards, limitations, or orders for which the State has brought a civil enforcement action, and only if the State seeks to require compliance with the same." *Frilling v. Village of Anna*, 924 F. Supp. 821, 836 (S.D. Ohio 1996) (emphasis in original). The diligent prosecution bar itself provides that it only applies to "any violation" for which the "State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law. . . ." 33 U.S.C.A. § 1319(g)(6)(A)(ii) (West Supp. 2000). The Order entered into between ADEM and the defendant covers excessive effluent discharges for the months of May, June, July and August 1999. Paragraph H of the Order states that it is intended to operate as a full resolution of the violations cited in the Order. However, the plaintiff alleges that numerous Permit violations have occurred at the WWTP since August 1999. Furthermore, as jurisdictionally required for citizen suits, plaintiff has alleged that these violations are continuous and ongoing. *See* 33 U.S.C.A. § 1365(a)(1).

be jurisdictionally barred.

At the outset of this analysis it is important to highlight the distinction between subparagraphs (ii) and (iii) of 33 U.S.C. § 1319(g)(6)(A). Subparagraph (iii) will bar any claims for which "the State has issued a final order not subject to further judicial review and the violator has paid a penalty under this subsection, or such comparable State law, as the case may be." 33 U.S.C. § 1319(g)(6)(A)(iii). Consequently, any claims made by McAbee specifically addressed in the Order and for which the City paid the assessed penalty will be barred if ADEM's administrative enforcement scheme is "comparable" to 33 U.S.C. § 1319(g). *See California Sportfishing Protection Alliance v. City of West Sacramento*, 905 F. Supp. 792, 801 (E.D. Cal. 1995) (finding that claims in citizen suit covered in the State civil penalty complaint were barred because the complaint was a final order not subject to judicial review and the City paid the assessed fine).

For all other violations addressed in McAbee's Complaint, the diligent prosecution bar will only apply if the requirements of subsection (ii) are satisfied. *See California Sportfishing*, 905 F. Supp. at 801. Therefore, an analysis of whether ADEM commenced and diligently prosecuted an administrative enforcement action under a state law comparable to 33 U.S.C. § 1319(g) is required.

**Commencement**

The first element required under subsection (ii) is that a State commence an enforcement action against the alleged polluter. The FWPCA does not define the term "commencement." Furthermore, the Eleventh Circuit has not addressed what specific acts constitute commencement. However, the Eighth Circuit in *Arkansas Wildlife* found that the State of Arkansas commenced an action within subparagraph (ii) when it issued and filed a consent

18

administrative order. *Arkansas Wildlife*, 29 F.3d at 379-80.  The Eighth Circuit reached this

conclusion by examining Arkansas' statutory scheme and concluding that the state enforcement

agency could commence enforcement proceedings by issuing a Notice of Violation or by filing a

Consent Administrative Order. *Id.* at 379.  Additionally, in *Sierra Club v. Colorado Refining

Company*, 852 F. Supp. 1476 (D. Colo. 1994), the district court concluded that the State of

Colorado commenced an enforcement action under state law when it served a Notice of

Significant Noncompliance on the alleged polluter. *Colorado Refining*, 852 F. Supp. at 1485.

The district court explained that the Notice commenced an enforcement action because it

"demanded submission of a specific correction plan" from the polluter. *Id.*

     In light of this precedent, ADEM "commenced" an enforcement action against the City

when it issued Consent Order 00-041-CWP.  The AWPCA does not define "commencement."

However, the AWPCA provides ADEM with the authority to issue consent orders assessing

penalties for violations of standards its promulgates. *Ala. Code* § 22-22A-5(18)a (1975).  Acting

under the authority of this provision, ADEM assessed a civil penalty, required the City to take

immediate corrective measures, and established a schedule for further corrective measures and

the filing of monitoring reports.  Consequently, the issuing of the Order constitutes

commencement. *Arkansas Wildlife*, 29 F.3d at 379-80.  Furthermore, ADEM commenced an

action under AWPCA because it required the City to submit a schedule for corrective actions.

*Colorado Refining*, 852 F. Supp. at 1485.

**Diligent Prosecution**

     The second element that the must be established under subsection (ii) is that ADEM is

currently "diligently prosecuting" the City for violations cited in McAbee's complaint that were

not covered in the Order.

In *Citizens Legal Environment Action Network, Inc. v. Premium Standard Farms, Inc.*, No. 97-6073-CV-SJ-6, 2000 WL 220464 (W.D. Mo. Feb. 23, 2000), the district court summarized the current status of the case law regarding the "various indicia of diligence." *Id.* at *13. One of the factors courts consider is "whether the government required (or at least sought) compliance with the specific standard, limitation, or order invoked by the citizen suit."[16] *Id.* Another factor courts consider is whether the "government was monitoring the polluter's activities or otherwise enforcing the permits at issue after settlement with the polluter and up to the time of the citizen suit.[17] *Id.* The courts also consider the "possibility that the citizen-alleged violations will continue notwithstanding the polluter's settlement with the government."[18] *Id.* The final factor courts generally consider is the "severity of any penalties compared to (a) the polluter's economic benefits in not complying with the law, or (b) the penalties imposed for similar violations in the state."[19]

In examining the first factor, it would appear from McAbee's allegations that some of the violations alleged in the complaint would not be barred by the diligent prosecution bar. Under this factor, courts examine whether the government required compliance with the specific

---

[16] Cases cited for this proposition were *Frilling v. Village of Anna*, 924 F. Supp. 821, 837 (S.D. Ohio 1996); *Jones v. City of Lakeland*, 175 F.3d 410. 414 (6th Cir. 1999); *Murray v. Bath Iron Works Corp.*, 867 F. Supp. 33, 44 (D. Maine 1994).

[17] Cases cited for this proposition include *Williams Pipe Line Co. v. Bayer Corp.*, 964 F. Supp. 1300, 1324-25 (S.D. Iowa 1997); *Arkansas Wildlife Fed'n v. ICI Americas, Inc.*, 29 F.3d 376, 380 (8th Cir. 1994); *Culbertson v. Coats American, Inc.*, 913 F. Supp. 1572, 1579 (N.D. Ga. 1995).

[18] Cases cited for this proposition were *Atlantic States Legal Found. v. Eastman Kodak Co.*, 933 F.2d 124, 127 (2d Cir. 1991); *Sierra Club v. SCM Corp.*, 572 F. Supp. 828, 831 n.3 (W.D.N.Y. 1983), *abrogated on other grounds*, *Friends of the Earth v. Consolidated Rail Corp.*, 768 F.2d 57 (2d Cir. 1985).

[19] Cases cited in support of this proposition include *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 890 F. Supp. 470, 491-92 (D.S.C. 1995), *rev'd on other grounds*, 149 F.3d 303 (4th Cir. 1998), *rev'd*, ___ U.S. ___, 120 S. Ct. 693 (2000); *Comfort Lake Assoc., Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 357 (8th Cir. 1997).

standard, limitation, or order invoked by the citizen suit. *CLEAN*, 2000 WL 220464, at *13.

McAbee argues that in paragraph 11 of Count I of the complaint, she alleged three types of

violations never addressed or even mentioned in the Order.[20] McAbee relies on *Frilling v.*

*Village of Anna* for the proposition that a citizen suit is not barred when the state's civil suit

sought immediate compliance with only two of the six matters alleged by the plaintiff to have

been violated and the state's complaint and consent order failed to mention one or more of the

matters identified in the citizen suit. *Frilling*, 924 F. Supp. at 836-39. Although *Frilling*

addressed the application of the diligent prosecution bar to a civil suit initiated by the State, its

reasoning and logic are applicable to a state administrative proceeding. This court agrees with

McAbee that the a trial court must examine each individual count or claim in the citizen suit in

order to determine whether the State's administrative enforcement action is seeking compliance

with the particular standard, limitation, or order which the citizen plaintiff asserts has been

violated. *Id.* at 837. If the citizen plaintiff alleges any violations of the polluter's NPDES

Permit that were not addressed in the final administrative order, then summary judgment would

not be appropriate as to those claims because ADEM has not diligently prosecuted them.

    With that said, the City has presented evidence that would weigh in favor of this court

finding that the second factor has been met as to the violations addressed in the Order. Under

this factor, courts review whether the government is monitoring the polluter's activities or

otherwise enforcing the permits at issue after settlement with the polluter and up to the time of

the citizen suit. *CLEAN*, 2000 WL 220464, at *13. The City paid to ADEM the $11,200 civil

---

[20]   McAbee alleges that violations of the NPDES permit for percent removal of total suspended solids (TSS), percent removal of biochemical oxygen demand (BOD) and color were never addressed in the Order. (Plaintiff's Response to Defendant's Reply Brief at 4-5).

penalty on January 7, 2000. (Exhibit "A" to Defendant's Reply Brief). The City placed on line the "two roughing trickling filters" in December 1999. *Id.* The City upgraded the WWTP and construction was scheduled for completion in July 2001. (Page 3 of Engineering Report attached to Exhibit "A"). The static screens, roughing filters, aerated pond, and two final clarifiers are now on line at the WWTP. *Id.* at 10. When construction is completed at the WWTP, the completed plant will include the following renovations: new headworks, renovated grit and grease facilities, new raw wastewater pump station, new static screens, new screw pump to oxidation ditch, new oxidation ditch, new final clarifiers and renovated existing clarifiers, new chlorination and de-chlorination facilities, additional chlorine contact chambers, new aerobic digester and renovated existing aerobic digester, and new SCADA system. *Id.* at 12. The gravity sewer line and the Earthgrains pump station have been totally rehabilitated. *Id.* The Airport pump station was to receive a new auxiliary generator on October 31, 2000. *Id.* at 16. The generator was installed and operational by January 2001. (Letter of January 24, 2001, to Joe Lister from Roy C. Brittain attached to Exhibit "A"). The total projected construction costs for renovations at the WWTP, Earthgrains pump station, and Airport pump station was $13,933,200. (Page 15-16 of Engineering Report attached to Exhibit "A"). These steps taken by the City and the reports made to ADEM concerning the renovation progress demonstrate that ADEM was monitoring the City's activities and is enforcing the Permit at issue.

The third and fourth factors cannot be determined without additional discovery. As to the fourth factor, there is simply no evidence in the record to analyze the severity of the penalty assessment compared to the City's economic benefits in not complying with the law or the penalties imposed for similar violations in the State of Alabama.

**Comparability**

Finally, the diligent prosecution bar will only be applicable if the AWPCA's administrative penalties provisions are comparable to 33 U.S.C. § 1319(g). *Scituate*, 949 F.2d at 552. McAbee correctly notes in her Response to Defendant's Reply in Support of its Motion for Summary Judgment that another district judge in the Northern District of Alabama has slightly addressed whether *Ala. Code* § 22-22A-5(18) was comparable to 33 U.S.C. § 1319(g) in *Atlantic States Legal Foundation v. Tyson Foods*, 682 F. Supp. 1186 (N.D. Ala. 1988), *rev'd on other grounds*, 897 F.2d 1128 (11th Cir. 1990). The court stated:

> "This subsection" refers to section 1319(g) which authorizes the imposition of administrative penalties in appropriate cases. Alabama has a law comparable to that subsection. Section 22-22A-5(18) provides for the imposition of civil penalties by the Alabama Department of Environmental Management . . . . Therefore, the diligent prosecution of an action under Ala. Code § 22-22A-5(18) with respect to the violations in question would operate to remove the plaintiff's standing to bring these actions.

*Tyson Foods*, 682 F. Supp. at 1187. While the court stated that *Ala. Code* § 22-22A-5(18) was comparable to 33 U.S.C. § 1319(g), the court's specific holding in *Tyson Foods* was that the citizen suit was to be dismissed because of the plaintiff's lack of standing. *Id.* at 1187, 1191. The court did not directly hold that the aforementioned statutes were "comparable" as intended by the federal statute. It did not go through a detailed analysis of *Ala. Code* § 22-22A-5(18) and 33 U.S.C. § 1319(g) to determine if the provisions were comparable. It simply noted that both statutes provided for the imposition of civil penalties. *Id.* at 1187.

McAbee correctly states that the courts are split on their interpretation of the phrase "State law comparable to this subsection [§ 1319(g)]." 33 U.S.C.A. § 1319(g)(6)(A)(ii). The Eighth and First Circuits have made the most liberal assessments of the term "comparable." In *Scituate*, the First Circuit found that the Massachusetts Clean Waters Act was comparable to 33

23

U.S.C. § 1319(g) even though the State decided not to utilize the penalty provisions of its Clean

Waters Act. *Scituate*, 949 F.2d at 555-56. The First Circuit explained that even though the

specific statutory scheme under which the State issued its Administrative Order did not contain a

penalty provision, another section of same statute contained such provision. *Id.* The First

Circuit determined comparability by examining the entire statutory scheme instead of the precise

statutory section under which the Administrative Order was issued. *Id.* In *Arkansas Wildlife*,

the Eighth Circuit also concluded that enforcement provisions of the Arkansas Water and Air

Pollution Control Act were comparable to 33 U.S.C. § 1319(g). *Arkansas Wildlife*, 29 F.3d at

382. The citizen suit plaintiff argued that the public notice and participation provisions in the

state statutory scheme were not comparable. *Id.* at 381. The plaintiff argued that the FWPCA

required that "'[b]efore issuing an order assessing a civil penalty under this subsection the

Administrator [of EPA] . . . shall provide public notice of and reasonable opportunity to

comment on the proposed issuance of such order.'" *Id.* In contrast, the plaintiff argued, the

Arkansas statute provided only an "ex post facto citizen's right to intervene, with no public

notice at any time, and no opportunity to comment while the order is being proposed." *Id.* In

spite of this argument, the Eighth Circuit relied on *Scituate* and held that the Arkansas statute

was comparable. *Id.* It stated that the comparability requirement may be satisfied if "the state

law contains comparable penalty provisions which the state is authorized to enforce, has the

same overall enforcement goals as the federal CWA, provides interested citizens a meaningful

opportunity to participate at significant stages of the decision-making process, and adequately

safeguards their legitimate substantive interests." *Id.*

　　　　Unlike the Eighth and First Circuit's liberal view that the state statutory scheme may

loosely compare with the federal scheme, the Ninth and Sixth Circuits appear to require the state

24

penalty provision to closely parallel the federal approach by including penalty amounts, public

participation, and judicial review. The Ninth Circuit has determined that the comparable state

law must contain a penalty provision and that a penalty must actually have been assessed under

state law. *Citizens for a Better Env't v. UNOCAL*, 83 F.3d 1111, 1115 (9th Cir. 1996). The

Sixth Circuit has recently concluded that the Tennessee Water Quality Control Act was not

comparable to 33 U.S.C. § 1319(g). *Jones v. City of Lakeland*, 224 F.3d 518, 523-24 (6th Cir.

2000). The Sixth Circuit based its conclusion on the fact that the state statutory scheme did not

require public notice of hearings, nor did it provide third parties with an opportunity to initiate or

join enforcement proceedings and consent orders. *Id.* at 523.

Various district courts have reached the same result that the Sixth Circuit arrived at in

*Jones*. In *Atlantic States Legal Foundation, Inc. v. Universal Tool & Stamping Co., Inc.*, 735 F.

Supp. 1404 (N.D. Ind. 1990), the court held that Indiana's statutes governing administrative

penalties for Clean Water Act violations were not comparable to § 1319(g). At the outset of its

analysis, the court noted the remarks of Senator John Chaffee, the principal author and sponsor

of the 1987 amendments to the Clean Water Act:

> [T]he limitation of 309(g) applies only where a State is proceeding under a State
> law that is comparable to Section 309(g). For example, in order to be
> comparable, a State law must provide for a right to a hearing and for public notice
> and participation procedures similar to those set forth in section 309(g); it must
> include analogous penalty assessment factors and judicial review standards; and it
> must include provisions that are analogous to the other elements of section
> 309(g).

*Id.* at 1415 (quoting 133 Cong. Rec. S737 (daily ed., Jan. 14, 1987)). With this guidance in

mind, the court turned to its comparison of Indiana's statutes with §1319(g). The court held that

the statutes were not comparable because (1) no public notice was required for matters

concluded by consent decrees; (2) the public was not given a reasonable opportunity to comment

upon penalty assessments; and (3) citizens were not able to obtain judicial review of administrative orders under conditions similar to § 1319(g)(8). *Id.* at 1416.

In a case addressing a state statute similar to *Ala. Code* §22-22A-5(18)a., the district court held that the administrative penalty provisions of the New Jersey Water Pollution Control Act were not comparable to § 1319(g). *See Public Interest Research Group, Inc. v. GAF Corp.*, 770 F. Supp. 943 (D.N.J. 1991). The New Jersey statute allowed the commissioner to assess a civil penalty after giving notice to the offending party. *Id.* at 950. The statute also provided in relevant part:

> The ordered party shall have 20 days from receipt of the notice within which to deliver to the commissioner a written request for a hearing. After the hearing and upon finding that a violation has occurred, the commissioner may issue a final order after assessing the amount of the fine specified in the notice. If no hearing is requested, then the notice shall become a final order after the expiration of the 20-day period.

*Id.* The court noted that the statute clearly provided the violator with notice and an opportunity for a hearing before the final penalty was assessed. *Id.* With that said, the court held that New Jersey's statute was not comparable because § 1319(g)(4)(A) provides for public notice and comment *before* the assessment of a civil order. *Id.* (emphasis added). The New Jersey statute simply did not provide the public with pre-Order notice and opportunity to comment as required by § 1319(g)(4)(A).

In another illustrative case, a district court held that the administrative penalty provisions of Ohio's Clean Water Act were not comparable to § 1319(g) because the provisions contained no mandatory public notice requirement, nor a requirement of public notice and opportunity to comment prior to issuance of the civil complaint. *See Natural Resources Defense Council, Inc. v. Vygen, Corp.*, 803 F. Supp. 97, 102 (N.D. Ohio 1992). The court found four main public

26

participation safeguards to be present in § 1319(g): (1) notice of proposed orders and a reasonable opportunity to comment; (2) persons commenting on proposed order must receive individual notice of any hearings; (3) if no hearing is scheduled, such person may request a hearing; and (4) persons commenting on proposed orders have the right to seek judicial review of any penalty assessed. *Id.* at 101. The court held that these four requirements are mandatory and not permissive. *Id.* Since the Ohio Act did not contain these mandatory safeguards, the court held that it was not comparable to § 1319(g). *Id.* at 102. *See also Save Our Bays and Beaches v. City and County of Honolulu*, 904 F. Supp. 1098, 1129-30 (D. Haw. 1994) (holding that state statute was not comparable because its notice provisions were silent on the rights of the public to pre-decision notice) *and Idaho Rural Council v. Bosma*, 143 F. Supp. 2d 1169 (D. Idaho) (holding that state statute was not comparable to § 1319(g) because it did not contain provisions for public notice and hearings).

In order to determine comparability under either the "loose comparison" analysis of the First and Eighth Circuits or the "close analysis" tests of the Ninth and Sixth Circuits, this court must compare the penalty provisions, notice provisions and judicial review provisions of 33 U.S.C. § 1319 with the ones found in the AWPCA, *Ala. Code* §§ 22-22-1 to 22-22-14, and the Alabama Environmental Management Act, *Ala. Code* §§ 22-22A-1 to 22-22A-16.

The first element to be compared is the penalty assessment element. Under the federal statutory scheme, the Administrator of the EPA can assess either a Class I or Class II civil penalty. 33 U.S.C.A. § 1319(g)(2) (West Supp. 2000). A Class I penalty cannot exceed $10,000 per violation with the maximum penalty capped at $25,000. *Id.* at § 1319(g)(2)(A). A Class II penalty cannot exceed $10,000 per day with the maximum penalty capped at $125,000. *Id.* at § 1319(g)(2)(B). Under the state statutory scheme, ADEM can assess a civil penalty not to be less

27

than $100 or exceed $25,000 for each violation. *Ala. Code* § 22-22A-5(18)c. The total penalty

assessed under this subsection is capped at $250,000. Considering these provisions, the federal

and state penalty provisions appear to be comparable. They both give the enforcement agency

the discretion to assess administrative penalties within a comparable range. They both also

provide a cap for the total penalty assessed in an order. Given these similarities, this court

concludes that the penalty assessment provisions are comparable.

The second element to be compared is the notice and public participation provisions. As

far as notice and participation rights are concerned, the federal statutory scheme provides

"interested persons" with the right to public notice and an opportunity to comment, the right to

present evidence if a hearing is held, and the right to petition for a hearing if one is not held. 33

U.S.C.A. § 1319(g)(4) (West Supp. 2000). Specifically, before issuing an order assessing a civil

penalty, the Administrator or Secretary must provide public notice and a reasonable opportunity

to comment on the proposed assessment to any interested person. *Id.* at § 1319(g)(4)(A).

Furthermore, the Administrator or Secretary is required to give notice of any hearing held

considering the order assessing the penalty to any person who commented on the proposed

assessment. *Id.* at § 1319(g)(4)(B). Finally, if no hearing is held before the issuance of an order

assessing a penalty, any person who commented on the proposed assessment may petition the

Administrator or Secretary to set aside the order and hold a hearing on the penalty. *Id.* at §

1319(g)(4)(C).

The Alabama statutory scheme does not contain these provisions. First, the notice

provision regarding proposed orders is different. Under the federal scheme, the Administrator or

Secretary must provide public notice and a reasonable opportunity to comment "[b]efore issuing

an order assessing a civil penalty . . . ." 33 U.S.C.A. § 1319(g)(4)(A) (West Supp. 2000). In

28

contrast, the Alabama scheme provides for only ex post facto notice no "later than 15 days after issuance of any such order . . . ." *Ala. Code* § 22-22A-5(18)a (emphasis added). This ex post facto notice is provided to the public by publication for "one day in a newspaper of general circulation in the county where the violation has occurred." *Ala. Code* § 22-22A-5(18)a.4. The second major distinction involves the public's right to participate. Under the Alabama scheme, only the alleged polluter is allowed to participate in the penalty proceedings prior to a final order being entered. The statute specifically states that no order shall be issued until "the person subject thereto" has had an informal conference with members of ADEM. *Id.* The public is not allowed to intervene in these discussions. It is not allowed to submit comments, present evidence, or request a hearing on the proposed assessment and order. Once the order is final, only the violator and persons "aggrieved" by ADEM's administrative action have the right to request a hearing with the Environmental Management Commission (Commission) of ADEM to contest the issuance of the order.[21] *Id.* In light of these provisions, this court cannot conclude that the public's rights to notice and participation are comparable. The federal provisions focus on providing the public ("interested persons") with pre-order notice and opportunity to participate. To the contrary, the state provisions do not provide the public with pre-order notice or opportunity to participate.[22]

---

[21]   The public appears to be essentially barred from participating in any hearings before the Commission contesting ADEM's order. The administrative code regulations governing such appeals to the Commission provide a limited right of intervention in such hearings. *See Ala. Admin. Code* r. 335-2-1-.08 (1994). An individual can only intervene if he can demonstrate that (1) his presence would not prejudice the timely adjudication of the rights of the original parties; (2) that he would be aggrieved by a final order; and (3) that his interests are not being adequately represented by the original parties. *Id.* at § .08(6). Furthermore, the original parties can contest the intervention. *Id.* at § .08(1). To the contrary, the federal statutory scheme allows "any person" who commented on the proposed order to request and participate in any hearing on such order. 33 U.S.C.A. § 1319(g)(4) (West Supp. 2000).

[22]   This court recognizes that under *Ala. Code* § 22-22A-7(c), "any person aggrieved by an administrative action of the department" is entitled to hearing before the Commission. The term "aggrieved" is defined in the

Finally, the last element to be compared is the judicial review element. Only a "person aggrieved by an administrative action" is entitled to a hearing before the Commission. *Ala. Code* § 22-22A-7(c)(1). The order of the Commission constitutes a final action of the department (ADEM) and is appealable to the Montgomery County Circuit Court. *Id.* at § 7(c)(6). As previously mentioned, an "aggrieved" person is one having "suffered a threatened or actual injury in fact." *Ala. Admin. Code r.* 335-2-1-.02 (1994). Consequently, only the party to the administrative action and an individual suffering threatened or actual injury can seek judicial review of the Commission's decision. To the contrary, the federal statute allows any person who commented on the proposed assessment to seek judicial review of such assessment. 33 U.S.C.A. § 1319(g)(8) (West Supp. 2000). Congress requires no injury or threatened injury for standing.

In conclusion, the Alabama administrative penalties provisions are not comparable under either the "loose comparison" or "close analysis" tests. Both tests require that interested citizens have a "meaningful opportunity to participate at significant stages of the decision-making process." *Arkansas Wildlife*, 29 F.3d at 381; *Jones*, 224 F.3d at 523-24. The most significant phase of the administrative decision making process occurs prior to the issuance of

---

Alabama Administrative Code section governing appeals of administrative actions of ADEM to mean "having suffered a threatened or actual injury in fact." *Ala. Admin. Code r.* 335-2-1-.02 (1994). The federal statute does not require an interested person to be "aggrieved" prior to requesting a hearing on the administrative assessment. The statute allows "*any person* who commented on the proposed assessment" to request a hearing. 33 U.S.C.A. § 1319(g)(4)(c) (West Supp. 2000) (emphasis added). More importantly, Alabama's procedure only provides an individual with post-Order consideration.

Additionally, this court acknowledges that the Alabama Administrative Procedures Act provides "parties" in "contested cases" the opportunity for a hearing after reasonable notice has been provided to the administrative agency. *Ala. Code* § 41-22-12(a). The court is not certain that McAbee would be considered a "party" to the action. The term "party" is defined as "[e]ach person or agency named or admitted as a party or properly seeking and entitled as a matter or right, whether established by constitution, statute, or agency regulation or otherwise, to be admitted as a party. . . ." *Id.* at § 41-22-3. McAbee was not a person named in the Order. This court is unaware any constitutional, statutory, or regulatory right that she would have to be considered a "party." Nonetheless, even if McAbee could be considered a "party" under this provision, this recognition would only provide her with post-Order participation rights.

the administrative order.  Under the Alabama statute, interested citizens are only provided ex post facto notice of an order, they are not given the right to comment on assessments, they cannot present evidence at pre-Order hearings, or petition for a hearing on a proposed assessment.  Even keeping in mind that Congress used the word "comparable" and not "identical,"[23] these key discrepancies essentially eliminate any opportunity for the public to initially participate in the administrative process.  This court is cognizant of the wishes of Congress that citizen suits supplement and not supplant government enforcement actions.  *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987).  However, citizens cannot be the "watchdogs" of environmental harms that Congress intended if they are not provided the benefit of pre-Order notice and participation rights.

Although this court decides that the statutes are not comparable, the court will address McAbee's claim that even if the court applies the diligent prosecution bar, it is only applicable to claims for civil penalties and not against claims seeking declaratory and injunctive relief.  The courts are again split on this issue.  The First Circuit was the initial circuit court to hold that 33 U.S.C. § 1319(g)(6)(A) barred claims for injunctive relief as well as civil penalties.  *Scituate*, 949 F.3d at 558.  The First Circuit based its decision on the fact that Congress did not differentiate between penalties when it provided citizens the right to "commence a civil action" on their own behalf in 33 U.S.C. § 1365.  *Id.* at 557-58.  The Eighth Circuit followed *Scituate* in *Arkansas Wildlife* based on its belief that a contrary conclusion would "undermine, rather than promote, the goals of the CWA, and is not the intent of Congress."  *Arkansas Wildlife*, 29 F.3d at 383.  The Eighth Circuit stated that "[a]llowing suits for declaratory and injunctive relief in

---

[23] *California Sportfishing*, 905 F. Supp. at 804.

federal court, despite a state's diligent efforts at administrative enforcement, could result in undue interference with, or unnecessary duplication of, the legitimate efforts of the state agency." *Id.*

Several district court opinions disagree with the reasoning and result of the First Circuit's decision in *Scituate*. In *California Sportfishing*, the district court disagreed with *Scituate* because the "language of the statute is unambiguous that only civil penalty actions are barred." 905 F. Supp. at 806. In *Coalition for a Liveable Westside, Inc. v. New York Department of Environmental Protection*, the district court held that the plain language of the statute "precludes only citizen suits *seeking civil penalties*." 830 F. Supp. 194, 196 (S.D.N.Y. 1993) (emphasis in original). The district court also cited legislative history from the Conference Committee Report in support of its conclusion:

> No one may bring an action to recover civil penalties under section . . . 505 of this Act for any violation with respect to which the Administrator has commenced and is diligently prosecuting an administrative civil penalty action . . . . [T] his limitation would not apply to (1) an action seeking relief other than civil penalties (e.g., an injunction or declaratory judgment)

H.R. Conf. Rep. No. 1004, 99th Cong., 2d Sess. At 133 (1986). In light of the plain language of the statute and this legislative history, the district court explicitly rejected the First Circuit's holding in *Scituate*. *Id. See Orange Env't, Inc. v. County of Orange*, 860 F. Supp. 1003, 1018 (S.D.N.Y. 1994) (holding that plain language 33 U.S.C. 1319(g)(6)(A) dictates that it only bars civil penalty actions and not claims for declaratory and injunctive relief).

A plain language reading of 33 U.S.C. § 1319(g)(6)(A) leads to the conclusion that the diligent prosecution bar only prohibits civil penalty actions when applicable. The statute provides that violations with respect to which the State has commenced and is diligently prosecuting an enforcement action "shall not be the subject of a civil penalty action under . . .

32

section 1365 of this title." 33 U.S.C.A. § 1319(g)(6)(A) (West Supp. 2000). This plain language, coupled with the legislative history cited in *Coalition for Liveable West Side*, lead to the conclusion that the diligent prosecution bar does not apply to claims for declaratory or injunctive relief.

## CONCLUSION

The court will deny the City's Motion for Summary Judgment. Because of the uncertainty of legal issues not previously addressed by the Eleventh Circuit and the split among the other circuits, the court is of the opinion that this order involves controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance termination of the litigation. Consequently, the court will certify the action for appeal pursuant to 28 U.S.C. § 1292(b).

This __15th__ day of October 2001.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

33